IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EVA MARIA AQUINO MELENDEZ,

    Petitioner,                      No. CIV S-09-0214 LKK DAD P

    vs.

MARK CHANDLESS, et al.,

    Respondents.                 FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner, a detainee at the Yuba County Jail, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which she contends that she is being unlawfully detained pursuant to an *ultra vires* deportation order.[1] Petitioner seeks the following relief: (1) a finding from this court that the immigration judge in her case lacked authority to deport petitioner *in absentia*, (2) a declaration that petitioner's detention based on an *ultra vires* deportation order is unlawful, (3) an order directing respondents to vacate the deportation order and release petitioner, (4) costs of the suit, and (5) such other relief as the court deems just and proper. (Pet. at 12.) Petitioner has also filed a motion for preliminary injunction in which she requests that:

---

[1] See Black's Law Dictionary 1522 (6th ed. 1990) (Ultra vires is defined as [a]n act performed without any authority to act on subject.).

1

a preliminary injunction should issue that enjoins respondents from further detaining her absent a showing: 1) the [immigration judge] noticed the hearing that resulted in the deportation order that is the basis of her detention, and thus had authority [to] conduct the hearing; and, 2) the resulting order evidences that Ms. Melendez was deported *in absentia* for her failure to appear at the noticed hearing.

(Mot. for PI at 4-5.)

## BACKGROUND

Petitioner alleges as follows. She left the Philippines on July 14, 1994, and entered the United States as a visitor with permission to remain in this country until January 13, 1995. (Pet. at 5.) Shortly after her arrival, petitioner applied for asylum stating that she feared harm at the hands of the New People's Army, "a militant, leftist organization that seeks to advance its agenda through violent means, and perceive all who oppose them as political enemies." (Id.)

In February 1995, petitioner appeared before the San Francisco Asylum Office of the U.S. Immigration and Naturalization Service. (Id. at 6.) On or about March 1, 1995, petitioner's case was referred to the Office of the Immigration Judge, and petitioner was provided an order to show cause which stated that petitioner was deportable and was required to appear before an immigration judge (IJ) on May 4, 1995, at 2:30 p.m. (Id.) Petitioner appeared but the hearing was continued to June 22, 1995 at 2:30 p.m. and petitioner was provided a notice reflecting that new hearing date and time. (Id.)

On June 22, 1995 at 2:00 p.m., one half hour before the noticed hearing time according to petitioner, the IJ conducted a hearing and ordered that petitioner be deported *in absentia* pursuant to 8 U.S.C. § 1252b(c)(1). (Id. at 7.) Petitioner's attorney at the time, Sidney Hall, entered an appearance on behalf of petitioner by filing a form EOIR-28; however, that form was not executed by petitioner. (Id.)

On March 25, 1997, petitioner's new attorney, Claro Mamaril, filed a motion to reopen with the IJ in which counsel argued that ineffective assistance by petitioner's prior

1 counsel provided exceptional circumstances justifying the reopening of the proceedings. (Id. at
2 7-8.) On April 8, 1997, the IJ denied the motion as untimely and on procedural grounds. (Id. at
3 8.) An appeal to the Board of Immigration Appeals (BIA) was filed on petitioner's behalf. (Id.
4 at 8-9.)

While that appeal was pending, attorney Bert Vega filed a motion to remand on petitioner's behalf in which he argued that petitioner was eligible to adjust her status to legal permanent resident because her husband had become a United States citizen. (Id. at 8.) The motion for remand was also based on petitioner's argument that her right to due process had been violated because the hearing at which she failed to appear was not noticed for 2:00 p.m. but for 2:30 p.m. (Id. at 9.) On April 27, 1999, the BIA dismissed the appeal and denied the motion to remand. (Id.) Attorney Vega then filed a petition for review on petitioner's behalf with the Ninth Circuit Court of Appeals. On January 9, 2001, the court denied the petition. (Id.)

On September 10, 2008, the Department of Homeland Security's agents went to petitioner's home unannounced, and arrested petitioner on the grounds that she was under a final order of deportation. (Id.)

On November 5, 2008, attorney Jesse Lloyd filed another motion to reopen petitioner's case and requested that the BIA exercise its authority to reopen the deportation proceedings *sua sponte* based on petitioner's good moral character and her substantial equities so that she could adjust her status and salvage the unity of her family. (Id. at 10.) On December 5, 2008, that motion was denied. (Id.)

On January 24, 2009, attorney Jagdip Sekhon filed the pending habeas petition with this court.

/////
/////
/////
/////

1 On February 26, 2009, the BIA denied yet another motion by petitioner to reopen her deportation proceedings.[2] (Second Response to OSC, filed March 5, 2009, at 2.) In her motion, petitioner argued that the IJ's *in absentia* deportation order was *ultra vires* as it was entered at an unnoticed hearing. (Id.) Petitioner indicates that she anticipates filing another petition for review in order to preserve the Ninth Circuit's jurisdiction to review the BIA's decision in this regard. (Id.)

In response to the habeas petition filed with this court, on February 9, 2009, petitioner was ordered to show cause why her petition should not be dismissed for lack of jurisdiction or be transferred to the U.S. Court of Appeals for the Ninth Circuit. Petitioner filed responses to that Order to Show Cause on both February 19, 2009 and March 5, 2009.

/////

/////

---

[2] This was petitioner's second motion to reopen filed with the BIA in which she argued that she had not received proper notice of the June 22, 1995, hearing. The BIA rejected that argument, finding as follows:

> Upon consideration of the motion, we find that the respondent [Aquino Melendez] has not shown that her failure to attend the scheduled deportation hearing on June 22, 1995, at 2:30 p.m., was in any way related to improper notice. The respondent makes no claim that she did not receive notice of the scheduled hearing. Furthermore, as we noted in our decision dismissing the appeal, the record reflects that the respondent had no intention of attending the deportation hearing on June 22, 1995, at 2:30 p.m., in compliance with the hearing notice[.] The instant motion, which is the respondent's second motion to reopen before the Board, and which has been filed well-beyond 90 days of our previous order, is, therefore, subject to the time and number restrictions imposed on motions to reopen[.] We acknowledge that the respondent's deportation to the Phillippines will likely result in hardship to the respondent and her family. Nevertheless, as a general matter, we invoke our *sua sponte* authority sparingly, treating it not as a general remedy for any hardships created by enforcement of the time and number limits in the motions regulations, but as an extraordinary remedy reserved for truly exceptional situations.

(Second Response to OSC, filed March 5, 2009, Ex. A at 2-3.)

**RESPONSE TO ORDER TO SHOW CAUSE**

In her response petitioner contends that she is not challenging the constitutionality of her deportation order but rather is claiming that it is an *ultra vires* order and a legal nullity. (First Response to OSC, filed Feb. 19, 2009, at 2.) Petitioner argues that because she was not provided with proper notice of the time of the hearing, the IJ lacked statutory authority to order her deportation. (Id.) Citing the Immigration and Nationality Act and other statutory provisions, petitioner argues that the IJ was required to provide her with a "reasonable opportunity to be present." (Id. at 3.) She reasons that because the hearing was not noticed for 2:00 p.m., the IJ did not have statutory authority to proceed at 2:00 p.m, instead of 2:30 p.m. (Id.) In addition, petitioner argues that the IJ has statutory authority to proceed *in absentia* only where there is "'clear, unequivocal, and convincing evidence that the written notice [of the hearing] was . . . provided.'" (Id.) Here, petitioner asserts, there was no notice of a hearing that would commence at 2:00 p.m. on the day in question. (Id.)

Petitioner also argues that a federal habeas petition is the proper vehicle for challenging an *ultra vires* order and that her case is therefore properly before this court. (Id. at 4.) Petitioner acknowledges that § 106(c) of the REAL ID Act (codified at 8 U.S.C. § 1252 note), requires that habeas petitions pending before the District Court at the time of its enactment be transferred to the Circuit Court of Appeals and treated as petitions for review. (Id.) However, relying on out of circuit authority, petitioner contends that because her habeas petition was not before this court on May 11, 2005, when the REAL ID Act went into effect, this action should not be transferred to the Ninth Circuit. (Id.)

Next, petitioner asserts that this court has jurisdiction over her habeas petition because she is challenging an *ultra vires* deportation order rather than seeking review of a final order of deportation. (Id. at 5.) Petitioner relies on the decision in Noriega-Lopez, 335 F.3d 874 (9th Cir. 2003) (holding that the issue of whether the BIA had authority to enter its own removal order could be raised for the first time in a habeas petition) in arguing that there is no

5

administrative remedy available to her in seeking to challenge the IJ's *ultra vires* exercise of authority. (Id. at 6-7.) In this regard petitioner asserts that although an *in absentia* deportation order can be challenged through a motion to reopen, the Immigration and Nationality Act does not provide her a means to vacate the deportation order on the grounds that the IJ lacked authority to enter the order. (Id. at 7.) Accordingly, petitioner contends that just as was the case in Noriega-Lopez, habeas provides the only available remedy to her. (Id.)

Although petitioner concedes that she has sought "prudential exhaustion through a motion to reopen," she argues that this should not "upend" this court's habeas jurisdiction. (Id. at 8.) She argues that the court should not require further administrative exhaustion of her claims because the record is not in dispute, she has not deliberately bypassed the administrative process, and there is little likelihood that the agency, if given the opportunity, will correct its own mistakes. (Id.)

Finally, petitioner contends that in order for the court to determine whether it has jurisdiction over her petition, the merits of her case must also be considered. (Id. at 9.) In this regard she states:

> The Court's jurisdiction rests on the issue of whether the IJ's *in absentia* deportation order is *ultra vires*. If the *in absentia deportation* order is *ultra vires*, this Court has jurisdiction and Ms. Melendez is entitled to habeas relief.

(Id.)

## ANALYSIS

I. The REAL ID Act of 2005

The Ninth Circuit has summarized the legal landscape addressed by Congress in enacting the REAL ID Act of 2005 as follows:

> Between 1961 and 1996, the INA provided that courts of appeals "shall be the sole and exclusive" forum for judicial review of orders of deportation. H.R.Rep. No. 109-72, at 172 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 240, 297. Congressional intent was to abbreviate the process of judicial review by eliminating "the

previous initial step in obtaining judicial review-a suit in a District Court." *Foti v. INS,* 375 U.S. 217, 225, 84 S. Ct. 306, 11 L .Ed.2d 281 (1963). Habeas review remained available to a limited class of aliens, including those being held in detention and those subject to orders of exclusion. *See* H.R.Rep. No. 87-1086 (1961), *as reprinted in* 1961 U.S.C.C.A.N. 2950, 2966. This system was designed to ensure that "no alien who has once had his day in court, with full rights of appeal to the higher courts, should be permitted to block his removal and cause unnecessary expense to the Government by further judicial appeals, the only purpose of which is delay." *Id.* at 2968. In 1996, Congress sought to further streamline immigration proceedings by enacting the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3546 (1996). Through these two Acts, Congress repealed the provision allowing habeas review for certain aliens. In addition, Congress eliminated *all* forms of judicial review of deportation orders against certain classes of criminal aliens. H.R. Rep. No. 109-72, at 172 (discussing history of AEDPA and IIRIRA regarding habeas review).

The IIRIRA also added 1252(b)(9) to Title 8, a consolidation provision known as the "zipper" clause. *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). This section is a "'zipper clause' in the sense that it consolidates or 'zips,' 'judicial review' of immigration proceedings into one action in the court of appeals." *Mahadeo v. Reno,* 226 F.3d 3, 12 (1st Cir.2000) (discussing INA § 242(b)(9), codified at 8 U.S.C. § 1252(b)(9)); *see also Flores-Miramontes v. INS,* 212 F.3d 1133, 1140-41 (9th Cir.2000) (explaining the legislative history of § 1252(b)(9)). Through this section, "Congress made clear that review of a final removal order is the only mechanism for reviewing any issue raised in a removal proceeding." H.R.Rep. No. 109-72, at 173, 2005 U.S.C.C.A.N. 240, 298.

Despite these efforts by Congress to streamline and to place statutory limitations on judicial review, the Supreme Court expanded judicial review for criminal aliens just five years later. In *INS v. St. Cyr,* the Court held that criminal aliens could challenge their removal orders in a habeas proceeding given "the absence of . . . a forum" to review their claims if habeas were deemed to be unavailable, "coupled with the lack of a clear, unambiguous, and *express* statement of congressional intent to preclude judicial consideration on habeas." 533 U.S. 289, 314, 121 S. Ct. 2271, 150 L. Ed.2d 347 (2001) (emphasis added). The Court held that there would be a "serious Suspension Clause issue" if the 1996 reforms were read to withdraw all forms of review over claims of criminal aliens. *Id.* at 305, 121 S. Ct. 2271. The ultimate effect of the decision in *St. Cyr* was to allow criminal aliens more

7

> judicial review than they had before the 1996 reforms, and more review than accorded to non-criminal aliens. H.R.Rep. No. 109-72, at 173.
>
> Congress enacted § 106 of the REAL ID Act to "address the anomalies created by *St. Cyr* and its progeny" by restoring judicial review "to its former settled forum prior to 1996." *Id.* at 174. To achieve these goals, the REAL ID Act expressly eliminated habeas review over all final orders of removal, but restored to the appellate courts jurisdiction over "constitutional claims or questions of law" in all cases - criminal and non-criminal. 8 U.S.C. 1252(a)(2)(D). As described by the Third Circuit, [t]hese modifications effectively limit *all* aliens to one bite of the apple with regard to challenging an *order of removal.*" Bonhometre v. Gonzales, 414 F.3d 442, 446 (3d Cir.2005) (emphasis added). Singh v. Gonzales, 499 F. 3d 969, 975-77 (9th Cir. 2007) (footnotes omitted).

II. <u>Independent Challenges to Removal Orders</u>

However, as made clear by legislative history, the REAL ID Act does not preclude habeas review by a district court where a petitioner is not making a direct challenge to a removal order but rather is raising a challenge to a detention that arose independent of a removal order. <u>Singh</u>, 499 F.3d at 978 ("The House Report concluded, '[m]oreover, section 106 would not preclude habeas review over challenges of detention that are *independent of challenges to removal orders*. Instead, the bill would eliminate habeas review *only over challenges to removal orders*."). Thus, in <u>Singh</u>, the Ninth Circuit concluded that petitioner's ineffective assistance of counsel claim stemming from his counsel's failure to file a timely petition for review with the court of appeals did not challenge the removal order itself. <u>Id.</u> at 979. The court reasoned that the claimed ineffective assistance of counsel occurred <u>after</u> the issuance of the removal order, and if successful in obtaining habeas relief, petitioner would obtain nothing more than a day in court through an opportunity for direct review of the removal order by the court of appeals. <u>Id.</u> Nevertheless, the court cautioned that its decision was "limited to a narrow class of cases that do not fall within the habeas restrictions of the REAL ID Act." <u>Id.</u> at 980.

In <u>Singh</u> the Ninth Circuit also provided the following examples of cases in which the district court retained habeas jurisdiction over such cases:

> Post-REAL ID Act cases considering the applicability of § 1252 have also distinguished between challenges to orders of removal and challenges that arise independently. See e.g., Puri v. Gonzales, 464 F.3d 1038, 1041 (9th Cir. 2006) (holding that "the REAL ID Act's jurisdiction-stripping provisions . . . does [sic] not apply [if the] claim is *not a direct challenge to an order of removal*" (emphasis added); Kumarasamy v. Att'y Gen., 453 F.3d 169, 172 (3d Cir. 2006) (holding that an alien who is challenging the legality of removal because he allegedly never received notice of his removal order is "not seeking review *of* an order of removal"); Madu v. U.S. Att'y Gen., 470 F.3d 1362, 1366 (11th Cir. 2006) (holding that a "petitioner who contests the very existence of an order of removal does not seek 'review of an order of removal' within the meaning of the REAL ID Act"); Ali v. Gonzales, 421 F.3d 795, 797 n.1 (9th Cir. 2005) (order denying reh'g) (noting that jurisdiction-stripping provisions of the REAL ID Act do not apply to a claim that petitioners may not be removed to a country that does not have a functioning government, "because petitioners do not challenge or seek review of any removal order").

Id. at 978.

The issue before the court in this case is whether petitioner's *ultra vires* argument is an independent claim or is instead one that poses a challenge to petitioner's order of removal.

### A. District Court Jurisdiction Where No Removal Order Exists

Petitioner has relied on the decisions in Kumarasamy v. Att'y Gen. 453 F.3d 169, 172 (3d Cir. 2006) and Madu v. U.S. Att'y Gen., 470 F.3d 1362, 1366 (11th Cir. 2006) in support of her argument that this court retains habeas jurisdiction over her claims. However, in both of those cases the district court was found to have habeas jurisdiction because no deportation order was ever issued. For instance, in Kumarasamy, an immigration judge had granted petitioner's application for withholding of removal to Sri Lanka which allowed him to stay and work indefinitely in the United States. 453 F.3d at 171. After four years in the United States, the Department of Homeland Security filed an unnoticed motion to amend the original order to include an order of removal. Id. After the amended order issued, Kumarasamy was taken into custody. Id. At the bond hearing, the immigration judge indicated that should Kumarasamy's attorney file a motion to stay the deportation, he would sign it. Id. However, before the motion for stay was filed, Kumarasamy was deported to Canada. Id. In rejecting the

9

Case 2:09-cv-00214-LKK-DAD   Document 14   Filed 07/16/09   Page 10 of 14

1 | government's argument that under the REAL ID Act the court was required to treat the appeal as
2 | a motion for review, the Third Circuit reasoned that

3 | > Kumarasamy is not seeking review of an order of removal.  Rather,
4 | > he claims that his deportation was illegal because there was *no*
    | > order of removal.

5 | > * * *

6 | > Here, Kumarasamy is not arguing that if the removal order in his
7 | > case was validly issued, that order does not lawfully authorize his
    | > removal from the United States  - he is not, in other words, seeking
8 | > review of a removal order.  Instead Kumarasamy is arguing that his
    | > removal was improper because there was no removal order at all
9 | > (even though, of course, one was issued, albeit belatedly).

10 | Kumarasamy, 453 F.3d at 172.  Therefore, the court of appeals reviewed the district court's
11 | action as a federal habeas judgment.  Id.
12 | Similarly, in Madu the petitioner, a citizen of Nigeria, was arrested by
13 | Immigration and Naturalization Service agents on charges of working without permission.  At
14 | the deportation hearing the petitioner admitted deportability and requested permission to
15 | voluntarily depart.  The immigration judge issued an order permitting voluntary departure "in
16 | lieu of an order of deportation."  Madu, 470 F.3d at 1364.  The petitioner left the United States
17 | but re-entered illegally after his application for a visa from the United States Embassy in Mexico
18 | City was denied.  Id.  He was arrested when he arrived at a scheduled interview for adjustment of
19 | status and visa application.  Id.  In seeking habeas relief the petitioner argued that he was not
20 | challenging a final order of deportation, but that he was being held in violation of his
21 | constitutional rights under the "fictitious pretense that he is subject to a final order of
22 | deportation."  Id. at 1365.  The district court concluded that petitioner was challenging an order
23 | of removal within the meaning of the REAL ID Act and transferred the case to the court of
24 | appeals.  Id.  The Eleventh Circuit disagreed and, following the reasoning of the Third Circuit in
25 | Kumarasamy, found that the district court had habeas jurisdiction over the action, stating. "[T]he
26 | /////

10

question presented by Madu's habeas petition is whether there is a removal order at all, which . . . is a different question than whether an extant removal order is lawful." Id. at 1367.

Finally, in Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006), the Ninth Circuit concluded that the district court had jurisdiction over a habeas petition filed by a citizen of Sri Lanka who had been granted asylum but continued to be imprisoned for almost five years. In so concluding, the court observed:

> Here, as we have noted, there is no final order of removal. To the contrary, Nadarajah has prevailed at every administrative level. Therefore, [habeas] jurisdiction remains in the district court, and on appeal to this Court [of Appeals], pursuant to 28 U.S.C. § 2241.

443 F.3d at 1075-76.[3]

The undersigned concludes that petitioner's reliance on these cases in support of her position that this court has jurisdiction to consider her petition is misplaced. In each of those cases either no removal order had been issued or whether such an order had been entered was disputed. Despite petitioner's argument in this case that the removal order is a legal nullity because the court lacked authority to issue it, the fact remains that a removal order was issued. That distinguishes petitioner's habeas action from the cases addressed above.

B. District Court Jurisdiction Where Challenges Do Not Implicate the Removal Order

As the Ninth Circuit recognized there is "a narrow class of cases that do not fall within the habeas restrictions of the REAL ID Act" which nonetheless implicate the validity of removal orders. Singh, 499 F.3d at 980. Such cases often involve claims of ineffective assistance of counsel. See Singh v. Gonzales, 499 F.3d at 972 (holding that a narrow claim of

---

[3] The court also notes that Noriega-Lopez was decided prior to enactment of the REAL ID Act and is not persuasive authority on the issue before the court. In Noriega-Lopez, the petitioner was challenging the statutory authority of the BIA to issue a *sua sponte* removal order. The Ninth Circuit concluded that only an immigration judge was authorized to issue orders of deportation and that the BIA's removal order, entered *sua sponte*, was a legal nullity. 335 F.3d at 884-85. Here, the statutory authority of the immigration judge to conduct an *in absentia* hearing and to enter a deportation order is not, and could not be, disputed.

11

ineffective assistance where counsel failed to file a timely petition for review with the court of appeals does not require review of an order of removal and the district court has habeas jurisdiction to hear the matter); Valdivia-Tostado v. Chertoff, No. 03:08-CV-00305-LRH-VPC, 2008 WL 2414035, at *2 (D. Nev. June 11, 2008) (relying on the decision in Singh and holding that "the alleged ineffective assistance of counsel occurred after the final order of removal. If Valdivia-Tostado ultimately prevails in this action, his remedy will be 'a day in court.'").

In addition, courts have held that the district court retains jurisdiction where the petitioner is challenging an arrest and detention after the removal order has been issued or is challenging other aspects of the administrative proceedings. See Kellici v. Gonzales, 472 F.3d 416, 420 (6th Cir. 2006) (concluding that district court had jurisdiction over a habeas petition that "challenged only the constitutionality of the arrest and detention, *not* the underlying administrative order of removal."); Nnadika v. Atty' Gen., 484 F.3d 626, 633 (3rd Cir. 2007) (remanding to the district court for consideration under its mandamus jurisdiction a petition for declaratory and injunctive relief from the denial of a I-730 asylum by spouse petition); but see Ginters v. Cangemi, 419 F. Supp. 2d 1124, 1131 (D. Minn. 2006) ("While Ginters' action does not challenge his removal order *per se*, in the sense that Ginters does not ask the Court to specifically review the denial of his asylum application and withholding of removal, a review of [the I-130 Petition for Alien Relative] by this Court resulting in a favorable determination for Ginters would indirectly challenge the validity of the removal order.").

III. Petitioner's Notice Challenge

Petitioner argues that her deportation order is *ultra vires* because she was not provided proper notice of the hearing at which the order was entered. The court is not persuaded by petitioner's argument that this challenge is independent of the removal order itself. Courts that have considered similar challenges have consistently found them to pose challenges to the removal order in question and thus have found the district court stripped of jurisdiction.

/////

Thus, in <u>Haider v. Gonzales</u>, 438 F.3d 902 (8th Cir. 2006), the petitioner had filed a habeas petition with the district court arguing that the *in absentia* removal order was invalid because he had moved and the notice setting forth the date and time of the hearing had been sent to his old address and not to his current address.  The district court transferred the case to the court of appeals, "concluding that it was 'left with the inescapable conclusion that [Haider]'s challenge to the constitutionality of the notice provided to him, is, in effect, a challenge to the ultimate Order of Removal.'" 438 F.3d at 910.  The Eighth Circuit agreed, finding that the habeas petition was "nothing more than [an] attack [of] the IJ's removal order[.]" <u>Id.</u>  Similar conclusions have been reached by the other courts to consider the issue.  See <u>Konopka v. Clausen</u>, No. 09-11840, 2009 WL 1384176, at *1 (E.D. Mich. May 14, 2009) (holding that petitioner's claim that she was not provided proper notice of her removal hearing is a direct attack on the removal order over which the district court lacks jurisdiction); <u>St. Jean v. Dep't of Homeland Security</u>, Civil No. 2007-102, 2008 WL 2901672, at *5 (D. Virgin Islands July 23, 2008) (concluding that the district court lacked jurisdiction because the actual existence of a removal order as a document received by petitioner was not in doubt, but rather petitioner sought to challenge only the "legal efficacy" of the order).

Here, petitioner's habeas petition requests that this court vacate the deportation order and release her from custody.  Therefore, it is clear that in this case the removal order is directly implicated and is the subject of petitioner's challenge.  Petitioner essentially challenges the adequacy of the notice with respect to her removal hearing.  As the courts in the cases addressed above have determined, that is a challenge going directly to the validity or legal efficacy of the removal order.  Therefore, pursuant to the REAL ID Act, this court lacks jurisdiction over petitioner's action.

**CONCLUSION**

After May 11, 2005, the effective date of the REAL ID Act, a habeas action challenging a removal order such as this one must be dismissed for lack of jurisdiction and may

not be transferred to the court of appeals as a petition for review.  See Iasu v. Smith, 511 F.3d 881, 888-89 (9th Cir. 2007); Puri v. Gonzales, 464 F.3d 1038, 1041 (9th Cir. 2006); see also, Medellin-Reyes v. Gonzalez, 435 F.3d 721, 723-34 (7th Cir. 2006) ("Collateral proceedings filed on or after May 11, however, will be dismissed outright; the window for belated judicial review has closed.")

Therefore, in accordance with the above, IT IS HEREBY RECOMMENDED that:

1. The petitioner's petition for a writ of habeas corpus be dismissed for lack of jurisdiction pursuant to the REAL ID Act; and

2. Petitioner's January 26, 2009 motion for preliminary injunction (Doc. No. 6) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen days after being served with these findings and recommendations, petitioner may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 15, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
mele0214.156